1
2
3
4
5
6
7
8
9
10
11

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

LUIS FERNANDO TORRES, et al.,                      CASE NO. CV F 10-0670 LJO GSA

              Plaintiffs,          **ORDER ON DEFENDANT CITY AND COUNTY'S F.R.Civ.P. 12 MOTION TO**

    vs.                                                      **DISMISS**
(Docs. 4, 5.)

STATE OF CALIFORNIA, et al.,

              Defendants.
_____/

### INTRODUCTION

Defendants City of Madera ("City") and Madera County ("County") seek to dismiss plaintiffs' wrongful detention/arrest and related tort claims as barred by immunities and lacking necessary elements. Plaintiffs respond that they have pled as much possible based on limited information and request reasonable time to amend their complaint. This Court considered the City and County 's F.R.Civ.P. 12(b)(6) motions to dismiss on the record without a hearing, pursuant to Local Rule 230(g). For the reasons discussed below, this Court DISMISSES with prejudice and without prejudice claims against the City and County.

1

# BACKGROUND

## Summary Of Plaintiffs' Claims[1]

Plaintiffs Luis Fernando Torres ("Mr. Torres"), Alejandro Torres, Aurora Torres and Armando Hernandez (collectively "plaintiffs") occupied a Madera residence.  On January 21-22, 2009, defendant Doe law enforcement officers and employees of defendants City, County and State of California ("State") "joined together to apprehend and arrest individuals who [were] in violation of their terms of parole."[2]  The complaint alleges claims for:

1.   Negligence that defendants'[3] failure "to take necessary action" subjected plaintiffs to "warrantless and illegal arrest, unjustified detention, and violations of individual's constitutional rights";

2.   Assault that "employees of each of the defendants acted intending to cause harmful and offensive contact with plaintiffs";

3.   Battery that defendants' employees touched plaintiffs "with the intent to harm or offend plaintiffs";

4.   False arrest that defendants "arrested plaintiff Luis Torres without a warrant";[4]

5.   False imprisonment that defendants deprived "plaintiffs' freedom of movement by the use of threats of force, force, fraud and unreasonable duress";

6.   Emotional distress that "defendants intended to cause plaintiffs emotional distress" and "acted with reckless disregard of the probability that the plaintiffs would suffer emotional distress";

7.   Trespass that defendants "intentionally, recklessly and negligently entered plaintiffs' property" without plaintiffs' permission;

---

[1]   The following summary is derived from plaintiffs' California Judicial Council form complaint ("complaint"), the target of the City and County's challenges.

[2]   The complaint names as Doe defendants 1-50 "agents and employees" of the State, City and County.  The complaint names as Doe defendants 51-100 "persons whose capacities are unknown to plaintiff."

[3]   The complaint's use of "defendants" presumably refers to the State, City and County collectively.

[4]   Mr. Torres alone appears to claim false arrest.

8.    Right of privacy that defendants "intentionally intruded" into plaintiffs' residence and engaged in conduct "highly offensive to a reasonable person"; and

9.    Violation of civil rights that defendants subjected "plaintiffs to warrantless and illegal arrest, unjustified detention, and violations of individual's constitutional rights under the Fourth Amendment."

The complaint seeks to recover for plaintiffs' wage loss, property damage and compensatory damages.

**Additional Facts**

In their opposition papers, plaintiffs note that:

1.    Unknown to law enforcement officers, Mr. Torres "had been released from parole approximately two months prior to the search which gives rise to these claims";

2.    "[N]o other person at the residence was on parole or probation";

3.    Mr. Torres "was arrested as a felon in possession and booked" but released two days later after it was determined that the alleged firearm was a BB gun; and

4.    No criminal charges were brought against plaintiffs.

**DISCUSSION**

**F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards**

The City and County seek dismissal based on immunities to the state law claims and lack of an alleged policy or custom to support *Monell* liability.

Recognizing deficiencies in the complaint, plaintiffs request to file an amended complaint.

A F.R.Civ.P. 12(b)(6) motion to dismiss is a challenge to the sufficiency of the pleadings set forth in the complaint. "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling*

1   *v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

2       In resolving a F.R.Civ.P. 12(b)(6) motion, a court must:  (1) construe the complaint in the light

3   most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine

4   whether plaintiff can prove any set of facts to support a claim that would merit relief.  *Cahill v. Liberty*

5   *Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996).  Nonetheless, a court is not required "to accept as

6   true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."

7   *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).  A court

8   "need not assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel.*

9   *Chunie v. Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir.1986), and a court must  not "assume that the

10  [plaintiff] can prove facts that it has not alleged or that the defendants have violated . . . laws in ways

11  that have not been alleged." *Associated General Contractors of California, Inc. v. California State*

12  *Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897 (1983).  A court need not permit an attempt

13  to amend if "it is clear that the complaint could not be saved by an amendment." *Livid Holdings Ltd.*

14  *v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

15      "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

16  allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more

17  than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

18  *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted).

19  Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to

20  plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing*

21  *Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).  In practice, "a complaint . . . must contain either

22  direct or inferential allegations respecting all the material elements necessary to sustain recovery under

23  some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v.*

24  *Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

25      In *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937,1949 (2009), the U.S. Supreme Court explained:

26          To survive a motion to dismiss, a complaint must contain sufficient factual
        matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A
27      claim has facial plausibility when the plaintiff pleads factual content that allows the court
        to draw the reasonable inference that the defendant is liable for the misconduct alleged.
28      . . . The plausibility standard is not akin to a "probability requirement," but it asks for

4

1   more than a sheer possibility that a defendant has acted unlawfully.  (Citations omitted.)

2   After discussing *Iqbal*, the Ninth Circuit Court of Appeals summarized: "In sum, for a complaint

3   to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that

4   content, must be plausibly suggestive of a claim entitling the plaintiff to relief."  *Moss v. U.S. Secret*

5   *Service*, 572 F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, __ U.S. __, 129 S.Ct. at 1949).

6   The U.S. Supreme Court applies a "two-prong approach" to address a motion to dismiss:

7   First, the tenet that a court must accept as true all of the allegations contained in
    a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of
8   a cause of action, supported by mere conclusory statements, do not suffice. . . .  Second,
    only a complaint that states a plausible claim for relief survives a motion to dismiss. . .
9   . Determining whether a complaint states a plausible claim for relief will . . . be a
    context-specific task that requires the reviewing court to draw on its judicial experience
10  and common sense. . . . But where the well-pleaded facts do not permit the court to infer
    more than the mere possibility of misconduct, the complaint has alleged – but it has not
11  "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

12  In keeping with these principles a court considering a motion to dismiss can
    choose to begin by identifying pleadings that, because they are no more than conclusions,
13  are not entitled to the assumption of truth. While legal conclusions can provide the
    framework of a complaint, they must be supported by factual allegations. When there are
14  well-pleaded factual allegations, a court should assume their veracity and then determine
    whether they plausibly give rise to an entitlement to relief.

15

16  *Iqbal*, __ U.S. __, 129 S.Ct. at 1949-1950.

17  With these standards in mind, this Court turns to the City and County's challenges to the

18  complaint.

19  **Failure To Satisfy F.R.Civ.P. 8**

20  The City attacks the complaint for failure to satisfy F.R.Civ.P. 8 pleading requirements.  The City

21  faults the complaint's "conclusory terms," mere legal conclusions without facts, and failure to name

22  individual City officers.

23  F.R.Civ.P. 8 requires a plaintiff to "plead a short and plain statement of the elements of his or

24  her claim, identifying the transaction or occurrence giving rise to the claim and the elements of the prima

25  facie case."  *Bautista v. Los Angeles County*, 216 F.3d 837, 840 (9th Cir. 2000).

26  F.R.Civ.P. 8(a)(2) requires "a short plain statement of the claim showing that the pleader is

27  entitled to relief."  F.R.Civ.P. 8(d)(1) requires each allegation to be "simple, concise, and direct."  This

28  requirement "applies to good claims as well as bad, and is the basis for dismissal independent of Rule

5

1  12(b)(6)." *McHenry v. Renne*, 84 F.3d 1172, 1179 (9ᵗʰ Cir. 1996). "Something labeled a complaint but

2  written more as a press release, prolix in evidentiary detail, yet without simplicity, conciseness and

3  clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a

4  complaint." *McHenry*, 84 F.3d at 1180. "Prolix, confusing complaints . . . impose unfair burdens on

5  litigants and judges." *McHenry*, 84 F.3d at 1179; *see Nevijel v. North Coast Life Ins. Co.*, 651 F.2d 671,

6  674 (9ᵗʰ Cir. 1981 (affirming dismissal of "verbose, confusing and almost entirely conclusory"

7  complaint).

8        Moreover, a pleading may not simply allege a wrong has been committed and demand relief.

9  The underlying requirement is that a pleading give "fair notice" of the claim being asserted and the

10 "grounds upon which it rests." *Yamaguchi v. United States Department of Air Force*, 109 F.3d 1475,

11 1481 (9ᵗʰ Cir. 1997). Despite the flexible pleading policy of the Federal Rules of Civil Procedure, a

12 complaint must give fair notice and state the elements of the claim plainly and succinctly. *Jones v.*

13 *Community Redev. Agency*, 733 F.2d 646, 649 (9ᵗʰ Cir. 1984). A plaintiff must allege with at least some

14 degree of particularity overt facts which defendant engaged in to support plaintiff's claim. *Jones*, 733

15 F.2d at 649. A complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual

16 enhancement.'" *Iqbal*, __ U.S. __, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct.

17 1955). The U.S. Supreme Court has explained:

18        While, for most types of cases, the Federal Rules eliminated the cumbersome
          requirement that a claimant "set out in detail the facts upon which he bases his claim,"
19        *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (emphasis added),
          Rule 8(a)(2) still requires a "showing," rather than a blanket assertion, of entitlement to
20        relief. Without some factual allegation in the complaint, it is hard to see how a claimant
          could satisfy the requirement of providing not only "fair notice" of the nature of the
21        claim, but also "grounds" on which the claim rests.

22 *Twombly*, 550 U.S. at 556, n. 3, 127 S.Ct. 1955.

23        The complaint lacks sufficient factual allegations to provide the City and County fair notice of

24 the nature of the claims against them. The complaint merely asserts conclusory elements deficient of

25 supporting facts. The complaint's extreme brevity obscures foundation for its claims. The complaint

26 fails to satisfy F.R.Civ.P. 8 pleading requirements to warrant dismissal of its claims.

27                          ***Monell* Policy Or Custom**

28        The County faults the complaint's absence of allegations that plaintiffs' alleged injuries "resulted

6

from a County practice, custom or policy, or as a result of deliberately indifferent training or supervision." The County notes the complaint's limited allegations that the County employed law enforcement who "joined together to apprehend and arrest individuals who are in violation of their terms of parole" and subjected "plaintiffs to warrantless and illegal arrest, unjustified detention, and violation of individual's constitutional rights under the Fourth Amendment." The County points out that nothing "links" the County to alleged constitutional deprivations other than employment of law enforcement and that 42 U.S.C. § 1983 ("section 1983") does not permit claims based on respondeat superior in the absence of wrongs "in accordance with a custom, policy or practice of the County." The City adds that the complaint's "conclusory language even fails to allege any official policy, custom or usage" of the City to cause a section 1983 violation.

Plaintiffs concede that the complaint does not allege a *Monell* claim but offer that "such a claim may be present once the names of the individual actors are ascertained."

"Section 1983 imposes two essential proof requirements upon a claimant: (1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." *Leer v. Murphy*, 844 F.2d 628, 632-633 (9th Cir. 1988).

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 811 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 2694, n. 3 (1979)). Section 1983 and other federal civil rights statutes address liability "in favor of persons who are deprived of 'rights, privileges, or immunities secured' to them by the Constitution." *Carey v. Piphus*, 435 U.S. 247, 253, 98 S.Ct. 1042 (1978) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 417, 96 S.Ct. 984, 996 (1976)). "The first inquiry in any § 1983 suit, therefore, is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" *Baker v. McCollan,* 443 U.S. 137, 140, 99 S.Ct. 2689 (1979). Stated differently, the first step in a section 1983 claim is to identify the specific constitutional right allegedly infringed. *Albright*, 510 U.S. at 271, 114 S.Ct. at 811. "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." *Baker*, 443 U.S. at 146, 99 S.Ct. 2689.

7

1    A local government unit may not be held liable for the acts of its employees under a respondeat

2    superior theory.  *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018

3    (1978); *Davis v. Mason County*, 927 F.2d 1473, 1480 (9th Cir.), *cert. denied*, 502 U.S. 899, 112 S.Ct.

4    275 (1991); *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443 (9th Cir. 1989).  "Federal case law

5    has long barred respondeat superior liability against state actors in suits brought under 42 U.S.C. §

6    1983."  *Fed. of African American Contractors v. City of Oakland*, 96 F.3d 1204, 1214 (9th Cir. 1996).

7    Claimants suing state actors under 42 U.S.C. § 1983 "must establish that their alleged injury was the

8    result of a 'policy or custom' of that state actor."  *African American Contractors*, 96 F.3d at 1215.

9    "[A] municipality cannot be held liable *solely* because it employs a tortfeasor."  *Monell*, 436 U.S.

10   at 691, 98 S.Ct. at 2018.  The local government unit "itself must cause the constitutional deprivation."

11   *Gilette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992), *cert. denied*, 510 U.S. 932, 114 S.Ct. 345

12   (1993).  Because liability of a local governmental unit must rest on its actions, not the actions of its

13   employees, a plaintiff must go beyond the respondeat superior theory and demonstrate that the alleged

14   constitutional violation was the product of a policy or custom of the local governmental unit.  *City of

15   Canton, Ohio v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197 (1989); *Pembaur v. City of Cincinnati*, 475

16   U.S. 469, 478-480, 106 S.Ct. 1292 (1986).  To maintain a civil rights claim against a local government,

17   a plaintiff must establish the requisite culpability (a "policy or custom" attributable to municipal

18   policymakers) and the requisite causation (the policy or custom as the "moving force" behind the

19   constitutional deprivation).  *Monell*, 436 U.S. at 691-694, 98 S.Ct. 2018; *Gable v. City of Chicago*, 296

20   F.3d 531, 537 (7th Cir. 2002); *see Rogan v. City of Los Angeles*, 668 F.Supp. 1384, 1387 (C.D. Cal.

21   1987) (to state a section 1983 claim against a municipality, "a plaintiff must show that: (1) he has

22   suffered a deprivation of a constitutionally protected interest; and (2) said deprivation was caused by an

23   official policy, custom or usage of the municipality").

24   An actionable policy or custom is demonstrated by:

25   1.   An "express policy that, when enforced, causes a constitutional deprivation," *Baxter v.

26       Vigo County School Corp.*, 26 F.3d 728, 735 (7th Cir. 1994);

27   2.   A "widespread practice that, although not authorized by written law or express municipal

28       policy, is so permanent and well settled to constitute a 'custom or usage' with the force

1    of law," *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915 (1988)

2    (plurality opinion); or

3       3.    Constitutional injury caused by a person with "final policymaking authority," *Praprotnik*,

4             485 U.S. at 123, 108 S.Ct. 915.

5        "The description of a policy or custom and its relationship to the underlying constitutional

6    violation, moreover, cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City,*

7    *Police. Dept.*, 130 F.3d 162, 167 (5th Cir. 1997). "[E]xistence of a policy, without more, is insufficient

8    to trigger local government liability." *Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992). However,

9    "municipal liability may be imposed for a single decision by municipal policymakers under appropriate

10   circumstances." *Pembaur*, 475 U.S. 469, 480, 106 S.Ct. 1292 (1986).

11       "More importantly, where action is directed by those who establish governmental policy, the

12   municipality is equally responsible whether that action is to be taken only once or to be taken

13   repeatedly." *Pembaur*, 475 U.S. at 481, 106 S.Ct. 1292. Local government liability is based on

14   "whether governmental officials are final policymakers for the local government in a particular area, or

15   on a particular issue." *McMillan v. Monroe County, Ala.*, 520 U.S. 781, 785, 117 S.Ct. 1734 (1997).

16       To impose *Monell* liability, a plaintiff "must identify the policy, connect the policy to the city

17   itself and show that the particular injury was incurred because of the execution of that policy. Plaintiff

18   must, of course, prove that his injury was caused by city policy." *Bennett v. City of Slidell*, 728 F.2d

19   762, 767 (5th Cir. 1984). Moreover, the "allegation of a single incident of unconstitutional conduct by

20   a municipal employee usually does not establish a sufficient basis for suing the municipality" in that "to

21   sue a municipality for the isolated constitutional wrong of one of its employees amounts to invocation

22   of the theory of respondeat superior, which was firmly rejected by the Supreme Court in *Monell*." *Powe*

23   *v. City of Chicago*, 664 F.2d 639, 650-651 (7th Cir. 1981).

24       As to the complaint here, the violation of civil rights' salient allegation is that defendants'

25   employees subjected "plaintiffs to warrantless and illegal arrest, unjustified detention and violations of

26   individual's constitutional rights under the Fourth Amendment." The complaint makes no attempt to

27   identify a City or County policy or custom much less link or connect such policy or custom to alleged

28   constitutional deprivation. The complaint points to no conduct of a particular City or County employee

9

or agent to substantiate "warrantless and illegal arrest, unjustified detention, and violations of individual's constitutional rights."  The complaint fails to identify a specific policy, custom or practice and to allege how a constitutional violation was a product of such policy, custom or practice.  The complaint fails to connect the City or County to a constitutional deprivation caused by the City or County or an agent or employee.  As plaintiffs concede, the complaint lacks a *Monell* claim or facts to support one.  In the absence of supporting facts, dismissal with prejudice of *Monell* claims is in order.

### Limited State Claim Liability

The County notes that public entity liability is limited to that provided by statute and that immunities apply.  The County explains that the California Government Claims Act ("Claims Act"), Cal. Gov. Code, §§ 810, et seq., is the lone "exception to public entities' sovereign immunity for claims arising under California law, as applied to all of Plaintiffs' causes of action except for the 42 U.S.C. § 1983 claim."

The Claims Act does not provide that a public entity is liable for its own conduct or omission to the same extent as a private person or entity.  *Zelig v. County of Los Angeles*, 27 Cal.4th 1112, 1128, 119 Cal.Rptr.2d 709, 722 (2002).  California Government Code section 815(a) provides that a "public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person,"  "[e]xcept as otherwise provided by statute."  In addition, public entity liability "is subject to any immunity of the public entity provided by statute" and "is subject to any defenses that would be available to the public entity if it were a private person."  Cal. Gov. Code, § 815(b).  "[S]tatutory liabilities are subordinated to statutory immunities."  *Universal By-Products, Inc. v. City of Modesto*, 43 Cal.App.3d 145, 154, 117 Cal.Rptr. 525 (1974). Moreover, "a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability," [e]xcept as otherwise provided by statute."  Cal. Gov. Code, § 815.2(b).

Certain statutes provide expressly for public entity liability in circumstances that are somewhat parallel to the potential liability of private individuals and entities, but the Claims Act's intent "is not to expand the rights of plaintiffs in suits against governmental entities, but to confine potential governmental liability to rigidly delineated circumstances." *Brown v. Poway Unified School Dist.*, 4

10

1    Cal.4th 820, 829, 15 Cal.Rptr.2d 679 (1993); *see Becerra v. County of Santa Cruz*, 68 Cal.App.4th 1450,

2    1457, 81 Cal.Rptr.2d 165 ("in absence of some constitutional requirement, public entities may be liable

3    *only* if a statute declares them to be liable");  *Michael J. v. Los Angeles County Dept. of Adoptions*, 201

4    Cal. App.3d 859, 866, 247 Cal.Rptr. 504  (1988) ("Under the Act, governmental tort liability must be

5    based on statute; all common law or judicially declared forms of tort liability, except as may be required

6    by state or federal Constitution, were abolished.")

7         A court first determines whether a statute "imposes direct liability" on a defendant public entity.

8    *Munoz v. City of Union City*, 120 Cal.App.4th 1077, 1111, 16 Cal.Rptr.3d 521, 547 (2004).  "[D]irect

9    tort liability of public entities must be based on a specific statute declaring them to be liable, or at least

10   creating some specific duty of care, and not on the general tort provisions of [California] Civil Code

11   section 1714."  *Eastburn v. Regional Fire Protection Authority*, 31 Cal.4th 1175, 1183, 80 P.3d 656

12   (2003).

13        "[B]ecause under the Tort Claims Act all governmental tort liability is based on statute, the

14   general rule that statutory causes of action must be pleaded with particularity is applicable."  *Lopez v.*

15   *So. Cal. Rapid Transit Dist.*, 40 Cal.3d 780, 795, 221 Cal.Rptr. 840 (1985).  Thus, "to state a cause of

16   action against a public entity, every fact material to the existence of its statutory liability must be pleaded

17   with particularity." *Peter W. v. San Francisco Unified Sch. Dist.,* 60 Cal.App.3d 814, 819,131 Cal.Rptr.

18   854 (1960)*.*  Moreover, "the plaintiff must plead facts sufficient to show his cause of action lies outside

19   the breadth of any applicable statutory immunity."  *Keyes v. Santa Clara Valley Water Dist.*, 128

20   Cal.App.3d 882, 885, 180 Cal.Rptr. 586 (1982).

21        With limitations on public entity liability in mind, this Court turns to immunities upon which the

22   City and County rely.

23                              **State Claim Immunities**

24        The County notes that dismissal is proper when a "complaint unambiguously shows that

25   immunity applies."

26                              *Parole Revocation*

27        The City and County claim immunity for parole revocation and cite to California Government

28   Code section 845.8 ("section 845.8") which provides that neither a public entity or public employee is

1   liable for "injury resulting from determining whether to parole or release a prisoner or from determining

2   the terms and conditions of his parole or release or **from determining whether to revoke his parole**

3   **or release**." (Bold added.)  The City and County argue that a "decision to revoke parole by searching

4   for and arresting miscreant parolees is a basic policy decision" for section 845.8 purposes.  The City and

5   County continue that their joining together with the State was based on "determining whether to revoke

6   . . . parole or release" to fall within section 845.8's immunity.

7            Section 845.8 addresses "determining" to revoke parole or release.  As such, it invokes and limits

8   immunity to decisions to revoke parole or release.  To the extent the complaint makes a claim based on

9   a decision to revoke parole or release, such claim is barred by section 845.8 immunity.  However, the

10  City and County fail to demonstrate application of section 845.8 immunity to conduct in connection with

11  arrest of a parolee whose parole is revoked or of a former parolee.  The decision to revoke parole is

12  distinguishable from action to arrest and which effectively revokes the parole.  The City and County

13  appear to attempt to expand section 845.8 immunity to any action arising after and related to a decision

14  to revoke parole.  Section 845.8 immunity does not stretch so far.  The City and County fail to

15  demonstrate that section 845.8 immunizes conduct arising during arrest to revoke parole.

16                                            *Discretion*

17           The City and County further seek immunity subject to an "exercise of discretion" under

18  California Government Code section 820.2 ("section 820.2"), which provides:

19           Except as otherwise provided by statute, a public employee is not liable for an
             injury resulting from his act or omission where the act or omission was the result of the
20           exercise of the discretion vested in him, whether or not such discretion be abused.

21  The City and County note that section 820.2 discretionary immunity extends to them as employing

22  agencies, pursuant to California Government Code section 815.2(b).

23           The County contends that "since the decision to revoke parole by searching for and arresting

24  miscreant parolees is a basic policy decision for purposes of discretionary immunity, the Doe defendants

25  are immune under California Government Code section 820.2, which would immunize the County under

26  California Government Code section 815.2(b) as to Plaintiffs' state-law claims."  The City argued that

27  similar application of section 820.2 discretionary immunity applies to it.

28            Section 820.2 "confers immunity for basic policy decisions which have been committed to

                                                  12

coordinate branches of government." *Odello Bros. v. County of Monterey*, 63 Cal.App.4th 778, 793, 73 Cal.Rptr.2d 903 (1998) (county decision as to its flood plan and to breach a levee in a particular manner "were plainly acts within County's discretion" to bar trespass claim)*; see Richardson-Tunnell v. School Ins. Program for Employees,* 157 Cal.App.4th 1056, 1064, 69 Cal.Rptr.3d 176 (2007) ("no provision of the Tort Claims Act authorizes an action for invasion of privacy against a public employee").  Section 820.2 "does not shield government entities from liability for ministerial decisions taken after the implementation of basic policy decisions." *Odello Bros.,* 63 Cal.App.4th 778, 793, 73 Cal.Rptr.2d 903. "In deciding whether action is discretionary, the California Supreme Court has rejected a mechanical analysis but focused upon policy considerations behind the grant of the immunity." *Odello Bros.,* 63 Cal.App.4th 778, 793, 73 Cal.Rptr.2d 903. "Courts and commentators have . . . centered their attention on an assurance of judicial abstention in areas in which the responsibility for basic policy decisions has been committed to coordinate branches of government. Any wider judicial review, we believe, would place the court in the unseemly position of determining the propriety of decisions expressly entrusted to a coordinate branch of government." *Johnson v. State of California,* 69 Cal.2d 782, 793, 73 Cal.Rptr. 240 (1968) (italics omitted).

The City and County seek global discretionary immunity for plaintiffs' state law claims. Although the decision to round up parole violators is discretionary, the City and County fail to substantiate extrapolation of exercised discretion to every act at issue, such as plaintiffs' arrest/detention and the manner of their arrest/detention.  The City and County's failure to demonstrate such a broad grant of immunity is due in part to the complaint's skeletal allegations which do not appear limited to supervisors and policymakers and which appear directed in part to peace officers who interacted directly with plaintiffs.  This Court is not in a position to dismiss all of plaintiffs' state law claims based on section 820.2 immunity.  However, the application and extent of section 820.2 immunity may become more clear with an amended complaint.

### Warrantless Arrest

The City and County seeks to invoke immunity for a proper warrantless arrest under Penal Code section 847(b), which provides in part:

> There shall be no civil liability on the part of, and no cause of action shall arise

1  against, any peace officer . . . for false arrest or false imprisonment arising out of any
2  arrest under any of the following circumstances:

      (1) The arrest was lawful, or the peace officer, at the time of the arrest, had
3      reasonable cause to believe the arrest was lawful . . .

4      The County notes that pursuant to California Government Code section 815.2(b), "this immunity

5  applies to the employee's agency."  The City and County fault the complaint's absence of allegations

6  that "officers did not have reasonable cause to believe the arrest was lawful" or acted outside the scope

7  of their employment or for personal gain.

8      The City and County are correct that the complaint lacks facts that an arrest was unlawful or that

9  arresting officers lacked reasonable cause that arrest was lawful.  The complaint merely references legal

10 conclusions that plaintiffs were subjected to "warrantless and illegal arrest, unjustified detention."  The

11 complaint's limited allegations fail to negate immunity for a proper warrantless arrest.

12                                   **Assault And Battery**

13     The City and County fault the assault and battery claims' absence of allegations of "unreasonable

14 force" in that "common-law definitions of assault and battery, standing alone, do not apply to peace

15 officers."  The City notes the absence of facts as to "which Plaintiffs were touched, where they were

16 touched, the type of force used, the amount of force, where the incident occurred, [and] which agency's

17 employees touched them."

18     In a battery action against a peace officer, the plaintiff "must prove unreasonable force as an

19 element of the tort."  *Edson v. City of Anaheim*, 63 Cal.App.4th 1269, 1272, 74 Cal.Rptr.2d 614 (1998).

20 "Battery includes assault; in fact, battery is a consummated assault. Assault is, therefore, necessarily

21 included in battery."  *People v. Heise*, 217 Cal. 671, 673, 20 P.2d 317 (1933).

22     The City and County are correct that the complaint lacks facts of unreasonable force or threat of

23 force to support assault and battery claims.  The complaint merely recites limited elements of such

24 claims to warrant their dismissal.

25                                   **Emotional Distress**

26     The City argues that the emotional distress claim fails to satisfy elements of negligent or

27 intentional infliction of emotional distress.  The City notes the absence of allegations of outrageous

28 conduct by or on behalf of the City, what emotional distress was suffered, which plaintiffs suffered

                                            14

1   emotional distress, and proximate cause of emotional distress attributable to the City.

2        The County argues that emotional distress is "derivative" of claims against public entities for

3   assault, battery and false arrest/imprisonment and the emotional distress claim fails with the other

4   claims. *See Susag v. City of Lake Forest*, 94 Cal.App.4th 1401, 1415, 115 Cal.Rptr.2d 269 (2002). The

5   County continues that since it is immune for assault, battery and false arrest/imprisonment, the emotional

6   distress claim fails.

7        The elements of prima facie case of intentional infliction of mental distress are (1) outrageous

8   conduct by the defendants, (2) intention to cause or reckless disregard of the probability of causing

9   emotional distress, (3) severe emotional suffering, and (4) actual and proximate causation of the

10  emotional distress. *Kiseskey v. Carpenters' Trust for So. California,* 144 Cal.App.3d 222, 229, 192

11  Cal.Rptr. 492 (1983).

12       The City is correct that the complaint lacks facts to support elements for an emotional distress

13  claim.  The complaint improperly attempts to blanket the City and County with emotional distress

14  without explanation of how or why the City and County are responsible for emotional distress.  As noted

15  above, the tort claims lack facts to support necessary elements to doom the emotional distress claim with

16  them.

17                              **Amended Complaint**

18       This Court has enumerated numerous deficiencies with the complaint.  This Court shares the

19  City's concern that plaintiffs lack facts to "show that amendment can correct the problems with the

20  complaint."  Nonetheless, out of an abundance of caution, this Court grants plaintiffs an opportunity to

21  amend all but section 1983 claims.  If plaintiffs elect to amend the complaint, this Court ADMONISHES

22  plaintiffs to cure the deficiencies, support claims with sufficient facts, and refrain to pursue claims which

23  lack factual or legal support or which are barred by immunities.

24       Plaintiffs request a "reasonable" time to amend their complaint.  Plaintiffs fail to quantify a

25  "reasonable" time.  Although the events giving rise to plaintiffs' claims occurred nearly 17 months ago

26  and this action has been pending for six months, plaintiffs claim inability to identify law enforcement

27  officers.  This Court will not reward plaintiffs' lack of diligence with a significant amount of time to file

28  an amended complaint given that plaintiffs have had sufficient time to obtain information.  Plaintiffs

1    offer nothing to explain delay to obtain information to support their claims.

2                                    **CONCLUSION AND ORDER**

3              For the reasons discussed above, this Court:

4        1.        DISMISSES with prejudice *Monell* claims against all defendants given plaintiffs'

5                  effective concession that they lack facts to support a *Monell* claim;

6        2.        DISMISSES without prejudice remaining claims against the City and County;

7        3.        ORDERS plaintiffs, no later than June 30, 2010, to file and serve either: (a) a first

8                  amended complaint which satisfies F.R.Civ.P. 8, other federal pleading requirements,

9                  and this order; or (b) a statement that plaintiffs elect not to pursue claims against the

10                 defendants named in the complaint;

11       4.        ADMONISHES plaintiffs that failure to satisfy F.R.Civ.P. 8, federal pleading

12                 requirements, and this order will warrant dismissal of claims; and

13       5.        ORDERS the City, County and State, no later than 20 calendar days after plaintiffs file

14                 an amended complaint, to file and serve a response to plaintiffs' amended complaint.

15             IT IS SO ORDERED.

16   **Dated:     June 9, 2010**              _____/s/ Lawrence J. O'Neill_____
                                              UNITED STATES DISTRICT JUDGE

17

18

19

20

21

22

23

24

25

26

27

28