1

2

3

4

5                IN THE UNITED STATES DISTRICT COURT

6            FOR THE EASTERN DISTRICT OF CALIFORNIA

7

8 LUIS FERNANDO TORRES, et al.,        CASE NO. 1:10-cv-00670 LJO SKO

9        Plaintiffs,              ORDER ON DEFENDANT'S MOTION FOR
                               SUMMARY JUDGMENT

10      vs.
                              (Doc. 47)

11 COUNTY OF MADERA, et al.,
                           ORDER DENYING AS MOOT

12        Defendants.            DEFENDANT'S MOTION FOR JUDGMENT
                            ON THE PLEADINGS

13                               (Doc. 45)

14 _____/

15       In this case, Plaintiffs Luis Torres, Alejandro Torres, Aurora Torres, and Armando Hernandez

16 seek damages against Defendant Sylvia Rodriguez for violations of the Fourth Amendment under 42

17 U.S.C. § 1983 and for assault, battery, false arrest and trespass in connection with a parole search of

18 Plaintiffs' residence on January 21, 2009.  Two matters are now pending: (1) Defendant Rodriguez's

19 motion for summary judgment; and (2) Defendant Rodriguez's motion for judgment on the pleadings.

20 Plaintiffs have opposed both motions, and Defendant Rodriguez has replied.  Upon consideration of the

21 parties' submissions and the entire record in this case, the Court (1) GRANTS IN PART the motion for

22 summary judgment, and (2) DENIES AS MOOT the motion for judgment on the pleadings.

23 **I.**        **FACTUAL BACKGROUND**[1]

24       Defendant Rodriguez is a parole agent employed by the California Department of Corrections

25 and Rehabilitation, Adult Paroles.  On January 21, 2009, Defendant Rodriguez and the Madera Gang

26

27      [1] The following facts are primarily derived from Defendant Rodriguez's Statement of Undisputed Facts.  (Doc. 47-
4.)  In opposing the motion for summary judgment, Plaintiffs failed to comply with Local Rule 260(b), which requires the

28 opposing party to "reproduce the itemized facts in the [defendant's] Statement of Undisputed Facts and . . . deny those that
are disputed[.]"  Accordingly, the facts contained in Defendant Rodriguez's Statement of Undisputed Facts are deemed
undisputed to the extent that they are properly supported.

Enforcement Task Force conducted a parole search of Plaintiff Luis Torres' residence.  The search was part of a wider parole sweep initiated by parole officials.  Each parole agent was asked to identify five active parolees to be searched for the purpose of ensuring parole compliance.  Defendant Rodriguez identified Plaintiff Luis Torres as an active parolee subject to search and supervision after a review of his case file and two state parolee databases on January 13, 2009.

Plaintiffs Luis Torres, Alejandro Torres, Aurora Torres, and Armando Hernandez were present at the residence at the time of the parole search.  The officers escorted most of the plaintiffs into the common area of the house by holding and directing them by the upper arm.  The only time Defendant Rodriguez drew her gun was when she and two other officers entered the room of Plaintiff Armando Hernandez, who was laying in bed at the time.  The officers ordered Plaintiff Armando Hernandez to wake up, get out of bed, and walk over to the common area.  Plaintiff Armando Hernandez complied without any incident.

The search of the residence ultimately unearthed a BB gun, a sword, and several knives.  As a result, the officers placed Plaintiff Luis Torres under arrest for violating the conditions of his parole.  Plaintiff Luis Torres was subsequently transported to a holding cell in county jail, where he remained until the next day.  The Madera Parole Unit released Plaintiff Luis Torres from custody on January 22, 2009, after they learned that Plaintiff Luis Torres had been discharged from parole back in December and was no longer subject to search or supervision.

## II.    PROCEDURAL HISTORY

Plaintiffs initiated this action in the Madera County Superior Court.  Plaintiffs claimed in their original complaint that the State of California, the County of Madera, the City of Madera, and Does 1-100 violated the Fourth Amendment and committed several state law torts by conducting the parole search of Plaintiffs' residence on January 21, 2009.  The County of Madera subsequently removed the action to this Court on April 15, 2010, based on this Court's jurisdiction over federal questions under 28 U.S.C. § 1331.

On April 27, 2010, the County of Madera filed a motion to dismiss, as did the City of Madera on May 3, 2010.  The Court granted both motions.  In doing so, the Court instructed Plaintiffs to either file an amended complaint or file notice that Plaintiffs no longer intended to pursue their claims against

the County of Madera and the City of Madera.  On June 30, 2010, Plaintiffs elected to file an amended complaint naming Sylvia Rodriguez, Jesus Hernandez, Nick Rojas, Brian Esteves, and Felix Gonzales as defendants to this action.  Plaintiffs claimed that these defendants violated the Fourth Amendment and committed assault, battery, false arrest, and trespass.

Most of the defendants have since been dismissed.  On April 19, 2011, pursuant to the parties' stipulation, the Court dismissed Brian Esteves and Felix Gonzales with prejudice.  Also, on November 17, 2011, Plaintiffs notified the Court that Jesus Hernandez and Nick Rojas have not been served with process and voluntarily dismissed the two defendants.  Defendant Rodriguez therefore remains as the sole defendant in this action.

On October 7, 2011, Defendant Rodriguez filed the now pending motion for judgment on the pleadings, arguing that Plaintiffs' state law claims should be dismissed for failure to allege compliance with the California Tort Claims Act.  Also, on October 28, 2011, Defendant Rodriguez filed the now pending motion for summary judgment.  Therein, Defendant Rodriguez contends that she (1) did not violate Plaintiffs' Fourth Amendment rights, (2) is entitled to qualified immunity, and (3) is immune from Plaintiffs' state law claims.  Plaintiffs filed oppositions to both motions on November 14, 2011, and Defendant Rodriguez filed replies on November 21, 2011.

III.    LEGAL STANDARDS

A.    Judgment on the Pleadings

A party may move for judgment on the pleadings after the pleadings are closed, so long as there is no delay to trial.  Fed. R. Civ. P. 12(c).  When used to raise the defense of failure to state a claim, "[a] motion for judgment on the pleadings faces the same test as a motion under [Federal Rule of Civil Procedure]12(b)(6)."  McGlinchy v. Shell Chemical Co., 845 F.2d 802, 810 (9th Cir. 1988).  See also Cafasso v. General Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 n.4 (9th Cir. 2011) ("[W]e have said that Rule 12(c) is functionally identical to Rule 12(b)(6) and that the same standard of review applies to motions brought under either rule.") (internal quotation marks and citation omitted).  The allegations of the plaintiff are accepted as true, and the pleadings are construed in the light most favorable to the plaintiff.  McGlinchy, 845 F.2d at 810.  Dismissal is then warranted if there is a "lack of a cognizable legal theory" or an "absence of sufficient facts alleged under a cognizable legal theory."  Balistreri v.

3

1  Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). To the extent that the pleadings can be cured

2  by the allegation of additional facts, the plaintiff should be afforded leave to amend. Cook, Perkiss &

3  Liehe, Inc. v. Northern California Collection Serv. Inc., 911 F.2d 242, 247 (9th Cir. 1990) (citations

4  omitted).

5          **B.     Summary Judgment**

6          Summary judgment is appropriate when the pleadings, the disclosure materials, the discovery,

7  and the affidavits provided establish that "there is no genuine dispute as to any material fact and the

8  movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one which

9  may affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

10  A dispute is genuine if the evidence is such that a reasonable trier of fact could return a verdict in favor

11  of the nonmoving party. Id.

12          A party seeking summary judgment "always bears the initial responsibility of informing the

13  district court of the basis for its motion, and identifying those portions of the pleadings, depositions,

14  answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes

15  demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317,

16  323 (1986) (internal quotation marks omitted). Where the movant will have the burden of proof on an

17  issue at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for

18  the moving party." Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). "On an issue

19  as to which the nonmoving party will have the burden of proof, however, the movant can prevail merely

20  by pointing out that there is an absence of evidence to support the nonmoving party's case." Id. (citing

21  Celotex, 477 U.S. at 323).

22          If the movant has sustained its burden, the nonmoving party must "show a genuine issue of

23  material fact by presenting *affirmative evidence* from which a jury could find in [its] favor." FTC v.

24  Stefanchik, 559 F.3d 924, 929 (9th Cir. 2009) (emphasis in the original). The nonmoving party must

25  go beyond the allegations set forth in its pleadings. See Fed. R. Civ. P. 56(c). "[B]ald assertions or a

26  mere scintilla of evidence" will not suffice. Stefanchik, 559 F.3d at 929. Indeed, the mere presence of

27  "some metaphysical doubt as to the material facts" is insufficient to withstand a motion for summary

28  judgment. Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "Where

4

1  the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there
2  is no 'genuine issue for trial.'" Id. at 587 (citation omitted).

3      In resolving a summary judgment motion, "the court does not make credibility determinations
4  or weigh conflicting evidence." Soremekun, 509 F.3d at 984. See Anderson, 477 U.S. at 255. Rather,
5  "[t]he evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in
6  [its] favor." Id. Inferences, however, are not drawn out of the air; the nonmoving party must provide
7  a factual predicate from which the inference may justifiably be drawn. See Richards v. Nielsen Freight
8  Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985).

9  **IV.    DISCUSSION**

10     **A.    Fourth Amendment**

11     The Court turns first to Plaintiffs' claims under the Fourth Amendment. Plaintiffs claim that
12  Defendant Rodriguez violated the Fourth Amendment by (1) searching Plaintiffs' residence without a
13  warrant, (2) detaining Plaintiffs while law enforcement officers conducted the search, and (3) arresting
14  Plaintiff Luis Torres for a parole violation despite the fact that he was no longer on parole at the time
15  of the arrest. Defendant Rodriguez moves for summary judgment on all of Plaintiffs' claims on the
16  ground that it was objectively reasonable for her to believe under the circumstances that Plaintiff Luis
17  Torres was on active parole.

18     **1.    Entry and Search**

19     The Fourth Amendment prohibits unreasonable searches and seizures. U.S. Const. amend IV.
20  The purpose of the Fourth Amendment is to "safeguard the privacy and security of individuals against
21  arbitrary invasions by governmental officials." Camara v. Municipal Court of the City and County of
22  San Francisco, 387 U.S. 523, 528 (1967). Of particular concern are arbitrary government invasions of
23  an individual's home. Indeed, "physical entry of the home is the chief evil against which the wording
24  of the Fourth Amendment is directed." Payton v. New York, 445 U.S. 573, 585 (1980) (citation and
25  internal quotation marks omitted). Therefore, the United States Supreme Court has made it clear that
26  ordinarily, government officials may not cross the "firm line" at the entrance of an individual's home
27  without a warrant. Id. at 590. Such an invasion is "presumptively unreasonable" and is a violation of
28  the Fourth Amendment. Id. at 586.

1    "The presumption, however, is not irrebuttable." Hopkins v. Bonvicino, 573 F.3d 752, 763 (9th

2    Cir. 2009).  In the context of parole, where a parolee has signed a condition of parole allowing searches

3    by law enforcement without a warrant, an officer may conduct a warrantless search of the parolee and

4    his residence without offending the Fourth Amendment.  See United States v. Knights, 534 U.S. 112,

5    122 (2001); Sanchez v. Canales, 574 F.3d 1169, 1174 (9th Cir. 2009) ("There is no question . . . that

6    parole and probation conditions are . . . categorically sufficient to justify the invasion of [a parolee's or

7    probationer's] privacy entailed by a home search.").  California has imposed such a condition of parole

8    on all its parolees.  See Cal. Penal Code § 3067(a) ("Any inmate who is eligible for release on parole .

9    . . shall agree in writing to be subject to search or seizure by a parole officer . . . at any time of the day

10   or night, with or without a search warrant and with or without cause.").  Thus, in California, warrantless

11   searches of a parolee and his residence are reasonable under the Fourth Amendment so long as they are

12   not arbitrary, capricious, or harassing.  See Samson v. California, 547 U.S. 843, 856-57 (2006); People

13   v. Reyes, 19 Cal. 4th 743, 753-54 (1998).

14        In this case, Defendant Rodriguez does not dispute that Plaintiff Luis Torres was *not* on active

15   parole at the time of the search on January 21, 2009.  The parties agree that Plaintiff Luis Torres was

16   discharged from parole some time in December 2008.  Nevertheless, Defendant Rodriguez argues that

17   Plaintiff Luis Torres and his residence could be searched pursuant to a warrantless parole search so long

18   as it was objectively reasonable for Defendant Rodriguez to believe that Plaintiff Luis Torres was on

19   parole and subject to such searches.  In other words, Defendant Rodriguez argues that her objectively

20   reasonable, albeit mistaken, belief that Plaintiff Luis Torres was on parole was a sufficient ground for

21   invoking the parole search exception to the Fourth Amendment, which otherwise requires officers to

22   obtain a warrant prior to searching a home.

23        As support for her argument, Defendant Rodriguez highlights the Ninth Circuit's decision in

24   Motley v. Parks, 432 F.3d 1072 (9th Cir. 2005).  In Motley, a task force of law enforcement officers

25   conducted an erroneous parole search of Darla Motley's residence.  Id. at 1076.  The officers believed

26   that Janae Jamerson, a California parolee subject to warrantless searches, was living with Ms. Motley

27   when in fact Mr. Jamerson had been taken back into custody approximately six weeks prior due to a

28   parole violation.  Id. at 1075.  In resolving the issue of whether the officers were entitled to qualified

6

immunity for the erroneous search, the Ninth Circuit first addressed the issue of what level of certainty law enforcement officers must have regarding a parolee's residence before they may conduct a valid parole search under the Fourth Amendment.  The Ninth Circuit ultimately held that "before conducting a warrantless search pursuant to a parolee's parole condition, . . . officers must have probable cause to believe that the parolee is a resident of the house to be searched."  Id. at 1080.

Defendant Rodriguez attempts to broaden this holding, arguing that Motley supports the related proposition that officers may conduct a warrantless parole search so long as they have probable cause to believe that the individual is on active parole.  The Court disagrees.  The Ninth Circuit's clear focus in Motley was on the level of certainty an officer must have regarding a parolee's *residence* prior to a search, not the level of certainty he must have regarding the individual's parole *status* itself.  Notably, there is no indication in Motley that the officers misunderstood Mr. Jamerson's parole status.[2]  Rather, the Ninth Circuit's analysis focused on the officers' error with respect to Mr. Jamerson's location: the officers believed him to be at Ms. Motley's house when in fact he was in custody.  All the cases cited by the Ninth Circuit in its discussion dealt with similar issues.  See United States v. Gorman, 314 F.3d 1105 (9th Cir. 2002) (in executing an arrest warrant, officers must have probable cause to believe that the named suspect resides or is present at the location); Watts v. County of Sacramento, 256 F.3d 886 (9th Cir. 2001) (same); Perez v. Simmons, 998 F.2d 775 (9th Cir. 1993) (same).  Therefore, the Court does not read Motley as supporting the proposition that probable cause or an objectively reasonable belief that an individual is on active parole is a sufficient basis to invoke the warrantless parole search exception to the Fourth Amendment.

The Court's reading of Motley is supported by the Second Circuit's decision in Moore v. Vega, 371 F.3d 110 (2d Cir. 2004), which is cited favorably in Motley itself.  See Motley, 432 F.3d at 1079.  In Moore, two parole agents received information from the Federal Bureau of Alcohol, Tobacco, and Firearms ("ATF") that an absconded parolee was presently residing at an address in Brooklyn, New York.  Moore, 371 F.3d at 113.  The agents acted on this information and initiated a warrantless parole

---

[2] Defendant Rodriguez contends that the officers did err with respect to Mr. Jamerson's parole status.  Defendant Rodriguez suggests that the fact that Mr. Jamerson was in custody for a parole violation meant that Mr. Jamerson's parole had been revoked and was not subject to parole searches.  (See Def.'s Mot. for Summ. J. at 8.)  Not true.  See People v. Hunter, 140 Cal. App. 4th 1147, 1153-55 (2006) (outlining the parole revocation process subsequent to an alleged parole violation and holding that "a parole search is authorized until parole is formally revoked.").

search of Yvonne Moore's residence.  Id. at 112-13.  After searching the residence, the agents realized

that they had been provided incorrect information from the ATF and left.  Id. at 113.  Ms. Moore later

sued the agents for violating her Fourth Amendment rights.  The Second Circuit agreed that a Fourth

Amendment violation had occurred.  The Second Circuit held that even though the agents reasonably

believed that they were acting upon sound information, the irreducible truth remained that Ms. Moore

was not a parolee subject to warrantless searches.  "Because [Ms. Moore was] not a parolee, she [could

not] be subjected to the same burdens upon her privacy, and the departures from the usual warrant and

probable-cause requirements allowed with respect to parolees [were] not justified for her."  Id. at 116.

As such, the warrantless search of her home was "*per se* unreasonable" and constituted a violation of

the Fourth Amendment.  Id.

The Tenth Circuit reached the same conclusion in the analogous context of a warrantless search

of a pervasively regulated commercial vehicle.  See United States v. Herrera, 444 F.3d 1238 (10th Cir.

2006).  Kansas, like most states, permits law enforcement officers to conduct warrantless searches of

commercial vehicles in pervasively regulated industries.  Id. at 1243.  The problem in Herrera, however,

was that an officer had stopped and searched a truck based on this authority even though the truck was

not in fact subject to warrantless searches: the truck did not qualify as a commercial vehicle because it

only weighed 10,000 pounds, *one* pound short of the definition of a commercial vehicle under Kansas

law.  Id. at 1241.  Under these circumstances, the Tenth Circuit found a Fourth Amendment violation.

The Tenth Circuit explicitly rejected the Government's argument that there was no Fourth Amendment

violation because the officer reasonably, albeit mistakenly, believed that he had authority to search the

truck without a warrant.  Id. at 1246-48.  The Tenth Circuit explained:

> The Government's argument that there was no Fourth Amendment violation in this case
> because the state trooper had an objectively reasonable, but mistaken, belief that Herrera
> was subject to a random administrative inspection focuses on the wrong participant in
> the seizure at issue here.  The validity of an administrative seizure and search does not
> turn on whether or not the trooper had an objectively reasonable belief that Herrera's
> truck qualified as a commercial vehicle subject to random inspections.  Rather, it turns
> on Herrera's decision to engage in a pervasively regulated business . . . .  The validity of
> an administrative inspection is premised on the fact that the owner of the property subject
> to the search "cannot help but be aware that his property will be subject to periodic
> [administrative] inspections undertaken for specific purposes."  It is only under such
> circumstances that the individual citizen has a reduced expectation of privacy in his or
> her commercial property that justifies a warrantless regulatory search and seizure under
> the Fourth Amendment.

1   Id. at 1247-48 (citations omitted).

2          Therefore, even if Defendant Rodriguez had an objectively reasonable, albeit mistaken, belief

3   that Plaintiff Luis Torres was subject to warrantless searches as a parolee, that belief was insufficient

4   to sidestep the presumption under the Fourth Amendment that a warrantless search of an individual's

5   home is unreasonable.  To invoke the warrantless search exception to the Fourth Amendment that is

6   applicable only to parolees, the targeted individual must in fact be a parolee.  See Moore, 371 F.3d at

7   116; Herrera, 444 F.3d at 1247.  Plaintiff Luis Torres was not a parolee.  Accordingly, the Court finds

8   that Defendant Rodriguez violated the Fourth Amendment when she entered Plaintiffs' residence and

9   conducted a search without a warrant.  See People v. Downing, 33 Cal. App. 4th 1641, 1650-51 (1995)

10  ("Where . . . the search is later found to be invalid, as in this case where it was conducted pursuant to

11  a probation condition or 'consent' that had expired, i.e., was nonexistent, at the time of the search, a

12  Fourth Amendment violation is shown[.]") (citation omitted).

13               **2.    Detention**

14         There is no dispute that the detention of Plaintiffs during the search constituted a seizure within

15  the meaning of the Fourth Amendment.  Whether the detention violated Plaintiffs' Fourth Amendment

16  rights therefore turns on whether Defendant Rodriguez had a warrant or some other lawful justification

17  for detaining Plaintiffs apart from the erroneous parole search.  See Payton, 445 U.S. at 589-90 (absent

18  a warrant or exigent circumstances, the seizure of an individual in his home is presumed unreasonable

19  under the Fourth Amendment).  Defendant Rodriguez did not.  Accordingly, the Court concludes that

20  Defendant Rodriguez violated the Fourth Amendment when she detained Plaintiffs in their own home

21  while conducting an erroneous parole search.

22               **3.    Arrest**

23         Defendant Rodriguez's warrantless arrest of Plaintiff Luis Torres was predicated on reasonable

24  belief that a parole violation had occurred.  See United States v. Rabb, 752 F.3d 1320, 1324 (9th Cir.

25  1984) (a parole officer may arrest a parolee if he reasonably believes that the parolee is in violation of

26  parole).  However, just as a parole search cannot justify a warrantless search of a non-parolee and his

27  residence, a parole violation cannot justify a warrantless arrest of a non-parolee in his residence.  See

28  Moore, 371 F.3d at 116; Herrera, 444 F.3d at 1247.  Accordingly, the Court concludes that Defendant

9

1   Rodriguez violated the Fourth Amendment when she arrested Plaintiff Luis Torres for a parole violation

2   despite the fact that he was no longer on parole at the time of the arrest.

3         **B.**      **Qualified Immunity**

4         Defendant Rodriguez argues that even if her actions did violate Plaintiffs' Fourth Amendment

5   rights, she is still entitled to qualified immunity.  Qualified immunity "is an immunity from suit rather

6   than a mere defense to liability[.]"  Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).  Qualified immunity

7   protects government officials from the general cost of litigation and from "liability for civil damages

8   insofar as their conduct does not violate clearly established statutory or constitutional rights of which

9   a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The central

10  purpose of qualified immunity is to balance two important interests: "the need to hold public officials

11  accountable when they exercise power irresponsibly and the need to shield officials from harassment,

12  distraction, and liability when they perform their duties reasonably."  Tibbetts v. Kulongoski, 567 F.3d

13  529, 535 (9th Cir. 2009) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)).

14        In determining whether an official is entitled to qualified immunity, the court must ask three

15  questions.  See Skoog v. County of Clackamas, 469 F.3d 1221, 1229 (9th Cir. 2006); Jensen v. City of

16  Oxnard, 145 F.3d 1078, 1085 (9th Cir. 1998).  "First, the court must ask whether '[t]aken in the light

17  most favorable to the party asserting the injury, the facts alleged show the officer's conduct violated a

18  constitutional right[.]'"  Skoog, 469 F.3d at 1229 (quoting Saucier v. Katz, 533 U.S. 194, 201(2001)).

19  Second, the court must ask "whether the right was clearly established at the time the officer acted."  Id.

20  (citing Saucier, 533 U.S. at 201-02).  Finally, third, the court must ask "whether the officer could have

21  believed, 'reasonably but mistakenly . . . that his or her conduct did not violate a clearly established

22  constitutional right.'"  Id. (quoting Jackson v. City of Bremerton, 268 F.3d 646, 651 (9th Cir. 2001)).[3]

23  While it is often beneficial to approach this inquiry in the sequence outlined above, it is not mandatory.

24  Pearson, 555 U.S. at 236.  The court may grant qualified immunity at any point it answers any of the

25  three questions in the negative.  See, e.g., Tibbetts, 567 F.3d at 535-39 (bypassing the first question and

26  granting the defendants qualified immunity on the second).

27

28        [3] The third question is often subsumed by the second question, and most courts have collapsed the two questions into one inquiry.  CarePartners LLC v. Lashway, 545 F.3d at 867, 876 n.6 (9th Cir. 2008).  Nevertheless, because the three-part test aids the analysis of this case, the court approaches the issue of qualified immunity under this framework.

In this case, qualified immunity ultimately turns on the third question.  The central question in this regard is "whether someone in the officer's position could reasonably but mistakenly conclude that his conduct complied with the [Constitution]." Groh v. Ramirez, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting) (citations omitted).  "[O]fficers are entitled to qualified immunity if they act reasonably under the circumstances, even if [their] actions result in a constitutional violation." Ramirez v. Butte-Silver Bow County, 298 F.3d 1022, 1027 (9th Cir. 2002), affirmed by Groh, supra.  "Officers will not be liable for mere mistakes in judgment, whether [their] mistake is one of fact or one of law." Butz v. Economou, 483 U.S. 478, 507 (1978).  See also Pearson, 555 U.S. at 231 ("The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.").  Indeed, qualified immunity affords officers "ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Liberal v. Estrada, 632 F.3d 1064, 1077 (9th Cir. 2011) (quoting Rodis v. City of San Francisco, 558 F.3d 964, 970-71 (9th Cir. 2009)).

In the specific context of an erroneous parole search, under facts similar to those in this case, a court in this district succinctly framed the issue of qualified immunity as follows: Was it objectively reasonable for the officer to rely on the information he did in determining whether the plaintiff was on active parole and subject to warrantless searches?  See Willis v. Mullins, 517 F. Supp. 2d 1206, 1224 (E.D. Cal. 2007) ("Qualified immunity thus boils down to whether it was reasonable for Defendants to rely on the information contained in the Parole Roster in order to determine if an individual is subject to a parole search condition.").  If so, the officer is entitled to qualified immunity and is not liable for mistakenly initiating a warrantless parole search of a non-parolee.  If not, the officer may be liable for violating the Fourth Amendment.

Other courts have framed the issue similarly.  See, e.g., Moore, 371 F.3d at 116-18; Dowell v. Griffin, Civil No. 09-2576 DMS (DMM), 2011 U.S. Dist. LEXIS 129344, at *29-31 (N.D. Cal. Nov. 8, 2011).  For example, in Moore, the Second Circuit, as discussed above, found that two parole agents violated the Fourth Amendment when they conducted a warrantless parole search of a home based on the mistaken belief that an absconded parolee resided there.  The Second Circuit's analysis, however, did not end there.  The court went on to find that the agents were entitled to qualified immunity despite

11

the violation because they reasonably, albeit mistakenly, believed that they were conducting a lawful parole search of a parolee's residence. In reaching this conclusion, the court noted that the two agents initiated the search only after they had received information from the ATF that an absconded parolee resided at the house. Moore, 371 F.3d at 117. The court emphasized that the agents' reliance on this information was objectively reasonable because as a general matter, "[i]nformation received from a law enforcement source may properly be relied on in the monitoring of convicted individuals released on probation or parole." Id. As such, the court concluded that actions of the two agents were shielded by qualified immunity.

Returning to the case at hand, Defendant Rodriguez offers evidence showing that she relied on several sources to determine whether Plaintiff Luis Torres was on active parole. The starting point in this matter appears to be Defendant Rodriguez's own personal involvement with Plaintiff Luis Torres' parole status. Defendant Rodriguez asserts that on October 30, 2008 (almost three months prior to the parole search), she, as the Parole Unit Supervisor, personally recommended that Plaintiff Luis Torres be retained on parole. (Rodriguez Decl. ¶ 17, Ex. B.) Despite a recommendation from a junior parole agent that Plaintiff Luis Torres be fully discharged from parole, Defendant Rodriguez decided to retain Plaintiff Luis Torres on parole because he had not attended or completed a "batterer's program." (See id., Ex. B.)

Although Defendant Rodriguez acknowledges that the District Administrator never sent her office any final notice approving or rejecting her recommendation, she maintains that her subsequent investigation into Plaintiff Luis Torres' parole status on January 13, 2009 (one week prior to the parole search) only affirmed her belief that Plaintiff Luis Torres was still on active parole. (Id. ¶ 10.) First, Defendant Rodriguez asserts that she reviewed Plaintiff Luis Torres' case file, which revealed that he visited the parole office as recent as January 7, 2009. (Id. ¶ 14, Ex. A.) Second, Defendant Rodriguez asserts that the case file notes also indicated that Plaintiff Luis Torres was scheduled for a return visit on March 4, 2009. (Id. ¶ 14, Ex. A.) Third, Defendant Rodriguez asserts that she confirmed Plaintiff Luis Torres' parole status using two state parolee tracking databases: CALPAROLE and the Offender Based Information System ("OBIS"). (Id. ¶¶ 6-7.) According to Defendant Rodriguez, both databases indicated that Plaintiff Luis Torres was still on active parole. (Id. ¶ 6.)

1   Therefore, the overwhelming thrust of Defendant Rodriguez's evidence is that she objectively

2   and reasonably believed that Plaintiff Luis Torres was on active parole because a confluence of reliable

3   sources (personal experience, the case file notes, and two state databases) indicated that Plaintiff Luis

4   Torres was on active parole.  In the face of this evidence, Plaintiffs fail to offer any evidence, or even

5   a substantive argument, that undermines the overall reasonableness of Defendant Rodriguez's belief.

6   Instead, Plaintiffs merely state in their opposition that the question of qualified immunity is "a disputed

7   question of fact as to what [Defendant Rodriguez] knew and when she knew it."  (Pls.' Opp'n to Mot.

8   for Summ. J. at 3.)  However, simply stating that a fact is in dispute does not automatically make it so,

9   and simply injecting "metaphysical doubt" as to the facts is insufficient to defeat summary judgment.

10  Matsushita, 475 U.S. at 586.

11  Where, as here, the moving party has carried its initial burden on summary judgment, the non-

12  moving party must produce evidence demonstrating the existence of a *genuine* issue of material fact.

13  Stefanchik, 559 F.3d at 929.  Plaintiffs have not done so here.  For example, Plaintiffs have produced

14  no evidence suggesting that the two databases that Defendant Rodriguez relied upon were unreliable.

15  Cf. Willis, 517 F. Supp. 2d at 1225-27 (denying officers qualified immunity because it was unclear how

16  the Parole Roster List was generated and whether it was reliable).  Nor have Plaintiffs identified any

17  specific error made by Defendant Rodriguez.  Cf. Dowell, 2011 U.S. Dist. LEXIS 129344, at *35-39

18  (denying qualified immunity to an officer in light of evidence that he could have discovered a notation

19  indicating that the plaintiff was no longer subject to warrantless probation or parole searches had the

20  officer examined the database more carefully).  In fact, Plaintiffs have not even hazarded a guess as to

21  what additional measures Defendant Rodriguez could have taken in order to ensure that Plaintiff Luis

22  Torres was on active parole.

23  The record therefore undisputedly shows that Defendant Rodriguez objectively and reasonably

24  believed that Plaintiff Luis Torres was on active parole and subject to warrantless searches.  As such,

25  the decision to enter and search Plaintiffs' residence, the decision to detain Plaintiffs during the search,

26  and the decision to arrest Plaintiff Luis Torres for violating a condition of parole were also objectively

27  reasonable.  See Samson, 547 U.S. at 847 (officers may search a parolee and his residence without a

28  warrant); Sanchez, 574 F.3d at 1173-75 (officers may detain the occupants of a home during a parole

1   search); <u>Rabb</u>, 752 F.3d at 1324 (a parole officer may arrest a parolee if he reasonably believes that the

2   parolee is violating parole).  No reasonable trier of fact could conclude on this record that Defendant

3   Rodriguez was "plainly incompetent" or that she "knowingly violate[d] the law" when she made these

4   decisions.  <u>Liberal</u>, 632 F.3d at 1077.  Accordingly, the Court concludes that Defendant Rodriguez is

5   entitled to qualified immunity on all of Plaintiffs' Fourth Amendment claims.

6        **C.    State Law Claims**

7        As indicated above, Plaintiffs present several state law claims: (1) assault; (2) battery; (3) false

8   arrest; and (4) trespass.  Defendant Rodriguez, for her part, now seeks to dispose these claims on three

9   separate grounds.  First, Defendant Rodriguez moves for judgment on the pleadings because Plaintiffs

10  have failed to allege compliance with the California Tort Claims Act ("CTCA").  Second, Defendant

11  Rodriguez argues in her motion for summary judgment that the Court should not retain supplemental

12  jurisdiction over Plaintiffs' state law claims.  Third, Defendant Rodriguez argues in her motion for

13  summary judgment that she is immune from Plaintiffs' state law claims under California Government

14  Code sections 820.2 (discretional acts immunity) and 845.8(a) (immunity for determinations regarding

15  parole release and revocation).

16       The Court declines to retain supplemental jurisdiction over Plaintiffs' state law claims.  Under

17  28 U.S.C. § 1367(c)(3), a district court "may decline to exercise supplemental jurisdiction over a [state

18  law] claim" if "all claims over which it has original jurisdiction" have been dismissed.  This discretion

19  is guided by the values of economy, convenience, fairness, and comity.  <u>See</u> <u>United Mine Workers of</u>

20  <u>America v. Gibbs</u>, 383 U.S. 715, 726 (1966); <u>Acri v. Varian Assocs., Inc.</u>, 114 F.3d 999, 1001 (9th Cir.

21  1997) (en banc).  Here, the interest of comity weighs heavily in favor of remanding Plaintiffs' state law

22  claims to state court.  <u>See</u> <u>Gibbs</u>, 383 U.S. at 726 ("Certainly, if the federal claims are dismissed before

23  trial, . . . the state claims should be dismissed as well.").  As to convenience and fairness, the parties have

24  expressed no particular affinity for proceeding in federal court: Plaintiffs initially filed their action in

25  state court and Defendant Rodriguez now argues that this Court should no longer retain supplemental

26  jurisdiction over this case.  Finally, with respect to economy, the simple truth is that this district has

27  severely limited resources and this Court cannot say that this case would be resolved more expediently

28  here than it would in state court.

1   **V.      CONCLUSION**

2          Accordingly, for the reasons set forth above, this Court:

3          1.      GRANTS Defendant Rodriguez qualified immunity on Plaintiffs' Fourth Amendment

4                  claims;

5          2.      REMANDS the remaining state law claims to the Madera County Superior Court; and

6          3.      DENIES AS MOOT Defendant Rodriguez's motion for judgment on the pleadings.

7

8                                          IT IS SO ORDERED.

9   **Dated:      December 9, 2011**                /s/ Lawrence J. O'Neill
                                            UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28